IN THE MATTER OF: M.D., N.D.

No. COA09-500

(Filed 15 September 2009)

## 1. Termination of Parental Rights— standard of proof—clear, cogent, and convincing evidence

The trial court did not commit prejudicial error in a termination of parental rights case by identifying the standard of proof used in making its findings of fact as "clear and cogent" where the record revealed that the trial court applied the proper evidentiary standard. Respondent did not challenge the sufficiency of the

evidence to support any of the factual findings that underlie the trial court's determination that respondent's parental rights to both minor children were subject to termination under N.C.G.S. § 7B-1111(a)(7).

**2. Termination of Parental Rights— grounds—abandonment**

The trial court did not err in concluding that grounds existed to terminate respondent father's parental rights because the unchallenged findings of fact supported the trial court's conclusion that respondent abandoned the children within the meaning of N.C.G.S. § 7B-1111(a)(7).

**3. Termination of Parental Rights— best interests of child— abuse of discretion standard**

The trial court did not abuse its discretion by concluding that it would be in the best interests of the juveniles to terminate respondent father's parental rights because the trial court considered the factors required by N.C.G.S. § 7B-1110(a) and respondent did not provide any basis for reversal of the trial court's order.

Appeal by Respondent-Father from orders entered 3 February 2009, *nunc pro tunc* to 9 January 2009, by Judge Charles Bullock in Harnett County District Court. Heard in the Court of Appeals 24 August 2009.

*Laura C. Brennan, PLLC, by Laura C. Brennan, for petitioner-appellee mother.*

*Ryan McKaig, for respondent-appellant father.*

ERVIN, Judge.

Jose D., Respondent-Father, appeals from orders terminating his parental rights in M.D. ("Michelle")[1] and N.D. ("Natalya").[2] After careful consideration of the record and briefs in light of the applicable law, we affirm the trial court's orders.

Shannon W. (Petitioner-Mother) and Respondent-Father are the parents of Michelle and Natalya. Petitioner-Mother and Respondent-

---

1. "Michelle" is a pseudonym that will be used throughout the remainder of this opinion in order to preserve the juvenile's privacy and for ease of reading.

2. "Natalya" is also a pseudonym that will be used throughout the remainder of this opinion in order to preserve the juvenile's privacy and for ease of reading.

**IN RE M.D., N.D.**

[200 N.C. App. 35 (2009)]

Father were married on 8 March 1996; separated in August 2000; and divorced on 9 August 2002. Michelle and Natalya, who are twins, were the only children born of the marriage. In February 2003, Petitioner-Mother married Timothy J. W. Petitioner-Mother and Timothy J. W. have one child. At all times after separating from Respondent-Father in August 2000, Respondent-Mother has had physical custody of Michelle and Natalya. On 2 September 2005, Judge Paul Gessner entered an order in the Wake County District Court awarding legal and physical custody of Michelle and Natalya to Petitioner-Mother and providing that Respondent-Father was "entitled to only supervised visitation with the minor children."

On 11 April 2008, Petitioner-Mother filed a petition seeking the entry of an order terminating Respondent-Father's parental rights in Michelle and Natalya. Petitioner-Mother sought this relief on two different grounds. First, Respondent-Mother alleged that Respondent-Father had willfully abandoned both children for at least six consecutive months immediately preceding the filing of the petition, so that Respondent-Father's parental rights were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(7). More specifically, Petitioner-Mother alleged that, since legal custody of Michelle and Natalya had been awarded to her on 2 September 2005, Respondent-Father had "taken no other steps or made no other acts [sic] which would demonstrate any filial affection for the children, except to contact [Petitioner-Mother] after he was arrested for non[-]payment of child support in March 2007." Secondly, Petitioner-Mother alleged that Respondent-Father had failed to provide child support for over one year prior to the filing of the petition, so that Respondent-Father's parental rights were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(4). More specifically, Petitioner-Mother alleged that Respondent-Father was subject to an order requiring him "to provide child support for the minor children in the amount of $350.00 a month, which includes his arrears payment[,]" and that he had failed to comply with this court-ordered child support obligation.

Petitioner-Mother's termination petition was heard before the trial court on 14 November 2008 and 9 January 2009. The trial court entered separate orders terminating Respondent-Father's parental rights in both Michelle and Natalya on 3 February 2009, *nunc pro tunc* to 9 January 2009. In its order with respect to Respondent-Father's parental rights in Natalya, the trial court concluded that his parental rights were subject to termination for failure to pay child support pursuant to N.C. Gen. Stat. § 7B-1111(a)(4). Moreover, the

trial court found that Respondent-Father's parental rights in both Michelle and Natalya were subject to termination for abandonment pursuant to N.C. Gen. Stat. § 7B-1111(a)(7).[3] Finally, the trial court concluded that it was in the best interests of both Michelle and Natalya that Respondent-Father's parental rights be terminated. Following the entry of the trial court's termination orders, Respondent-Father noted an appeal to this Court.

[1] Respondent-Father's first challenge to the trial court's termination orders is that the trial court failed to correctly identify the standard of proof used in making its findings of fact, effectively precluding this Court from determining that those findings were made on the basis of the "clear, cogent and convincing evidence" standard required by N.C. Gen. Stat. § 7B-1109(f). After carefully reviewing the entire record, we conclude that the trial court did not commit prejudicial error as alleged by Respondent-Father.

According to well-recognized provisions of North Carolina law, proceedings to consider petitions seeking the termination of parental rights are conducted in two phases: (1) the adjudication phase and (2) the dispositional phase. *In re Baker*, 158 N.C. App. 491, 581 S.E.2d 144 (2003). In the adjudication stage, the petitioner must prove by *clear, cogent, and convincing* evidence the existence of one or more of the grounds for termination. *In re Montgomery*, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984), *later proceeding on other grounds*, 77 N.C. App. 709, 336 S.E.2d 136 (1985); *see also* N.C. Gen. Stat. § 7B-1109(f) (stating that "all findings of fact shall be based on clear, cogent, and convincing evidence"). The trial court is required to "affirmatively state in its order the standard of proof utilized in [a] termination proceeding." *In re Church*, 136 N.C. App. 654, 657, 525 S.E.2d 478, 480 (2000).

In the written orders entered in these proceedings, the trial court stated that Petitioner-Mother had proven the allegations set out in the petitions seeking the termination of Respondent-Father's parental rights by "clear and cogent evidence[.]" Respondent-Father argues that this standard is substantively different from the "clear, cogent, and convincing evidence" required by N.C. Gen. Stat. § 7B-1109(f). Assuming *arguendo* that there is a substantive difference between "clear and cogent" and "clear, cogent, and convincing," we conclude

3. The trial court declined to terminate Respondent-Father's parental rights in Michelle for non-payment of child support because he was not subject to any order requiring him to make payments for her support given her status as a Medicaid recipient.

that the trial court's use of "clear and cogent" did not constitute prejudicial error in this case given that the record when viewed in its entirety clearly reveals that the trial court applied the proper evidentiary standard and given that Respondent-Father has not challenged any of the trial court's factual findings relating to the grounds for termination set out in N.C. Gen. Stat. § 7B-1111(a)(7) as lacking in adequate evidentiary support.

At the conclusion of the termination hearing, the trial court stated in open court that Petitioner-Mother had "provided . . . clear, cogent, and convincing " evidence that Respondent-Father's parental rights in Natalya were subject to termination pursuant to N.C. Gen. Stat. §7B-1111(a)(4) and that Respondent-Father's parental rights in Michelle and Natalya were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(7). Although the trial court should have stated in its written termination order that it utilized the standard of proof specified in N.C. Gen. Stat. § 7B-1109(f), the fact that the trial court orally indicated that it employed the appropriate standard and the fact that the language actually used by the trial court is reasonably close to the wording that the trial court should have employed satisfies us that the trial court did, in fact, make its factual findings on the basis of the correct legal standard. *See In re Church,* 136 N.C. App. at 657, 525 S.E.2d at 480. Our confidence that the trial court's failure to state the required standard of proof with perfect precision in its written termination order did not prejudice Respondent-Father is reinforced by our observation that the basic facts underlying the trial court's decision, as compared to the inferences to be drawn from those facts, do not appear to have been in sharp dispute between the parties. In addition, a careful examination of Respondent-Father's brief demonstrates that he has not challenged the sufficiency of the evidence to support any of the factual findings that underlie the trial court's determination that Respondent-Father's parental rights in both Michelle and Natalya were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(7). As a result, we conclude that the trial court did not commit prejudicial error by failing to state in its written termination order that its factual findings were based on "clear, cogent and convincing evidence."

[2] Next, Respondent-Father argues that the trial court erred by concluding that his parental rights were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(4) and (7). In essence, Respondent-Father challenges the adequacy of the trial court's factual findings to support its determination that grounds for terminating his parental

rights in both Michelle and Natalya existed. After carefully reviewing the record in light of the applicable law, we disagree.

A finding that any one of the grounds for the termination of a parent's parental rights in a juvenile enumerated in N.C. Gen. Stat. § 7B-1111 existed is sufficient to support a decision to terminate that parent's parental rights. *In re Taylor*, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). "The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." *In re D.J.D., D.M.D., S.J.D., J.M.D.*, 171 N.C. App. 230, 238, 615 S.E.2d 26, 32 (2005) (citing *In re Huff*, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), *appeal dismissed and disc. review denied*, 353 N.C. 374, 547 S.E.2d 9, 10 (2001)). We apply this standard in evaluating Respondent-Father's challenge to the trial court's determination that his parental rights in Michelle and Natalya were subject to termination.

The trial court found that Respondent-Father's parental rights in both Michelle and Natalya were subject to termination on the grounds of abandonment. According to N.C. Gen. Stat. § 7B-1111(a)(7), a parent's parental rights in a juvenile are subject to termination if "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion . . . ." This Court has indicated that a trial court's inquiry into whether a parent has abandoned a child for purposes of N.C. Gen. Stat. § 7B-1111(a)(7) should focus on the extent to which the respondent parent has engaged in

> wilful neglect and refusal to perform the natural and legal obligations of parental care and support . . . . [I]f a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wilfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child.

*In re Humphrey*, 156 N.C. App. 533, 540, 577 S.E.2d 421, 427 (2003) (quoting *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962) (citing *In re Davidson's Adoption*, 44 N.Y.S.2d 763 (1943)). Since Petitioner-Mother's petition to terminate Respondent-Father's parental rights in Michelle and Natalya was filed on 11 April 2008, the relevant six-month period specified in N.C. Gen. Stat. § 7B-1111(a)(7) for purposes of this case ran from 11 October 2007 to 11 April 2008.

In both termination orders, the trial court found as a fact that:

[Petitioner-Mother] has sole legal and physical custody of [Michelle and Natalya] by a custody order entered by the Honorable Paul G. Gessner of the Wake County District Court on September 2, 2005, following a February 28, 2005 hearing on both parties' claims for permanent custody. . . . [Respondent-Father] was awarded supervised visitation.

[Petitioner-Mother] lived in Cary, NC from 2002-2004. [Respondent-Father] had the address.

[Petitioner-Mother] moved to Wake Forest, NC after her marriage to [Timothy J. W.] and the birth of her youngest child. [Respondent-Father] had the address.

[Petitioner-Mother] moved to Buies Creek, NC in 2006 but did not notify [Respondent-Father] since she had not heard from him in about a year.

[Petitioner-Mother] has had the same telephone number since she moved from Ohio to North Carolina in 2002.

[Respondent-Father] has had this telephone number since [Petitioner-Mother] moved from Ohio to North Carolina in 2002.

In addition, in the order terminating Respondent-Father's parental rights in Michelle, the trial court found as a fact that:

5. [Michelle] currently receives services in a nursing home facility, Hilltop Home, Raleigh, North Carolina. The juvenile is non-verbal and non-ambulatory since May 2000.

. . . .

19. [Respondent-Father] has had the ability and ample opportunity to visit with [Michelle] at Hilltop Home. The only limitation on [Respondent-Father's] visitation has been the nursing home's policy of notifying [Petitioner-Mother] when [Respondent-Father] visited. [Respondent-Father] has visited [Michelle] four (4) times since her placement in the nursing home in 2002.

20. [Respondent-Father] did not visit with [Michelle] from 2005 and after the entry of the custody Order . . . until 2008. In 2008, [Respondent-Father] visited with [Michelle] once despite the fact he was in Raleigh, NC at least five (5) times.

21. [Respondent-Father] did not maintain contact with [Michelle] following the entry of the custody Order . . . because he had a car accident on April 4, 2005 in High Point, NC, was hospitalized for two (2) weeks, and reports that his life "was a mess."

22. [Respondent-Father] was arrested in March 2007 for violating the support order for [Natalya], [Michelle's] twin sister. [Respondent-Father] contacted [Petitioner-Mother] on her phone for the first time since 2005 following his arrest to ask for visitation with [Natalya]. [Petitioner-Mother] responded that she would need to confer with her attorney. [Respondent-Father] has not had any further contact with [Petitioner- Mother] for at least a year and a half.

23. [Respondent-Father] has not sent [Michelle] any cards, letters or gifts to the Hilltop Home.

. . . .

29. At all times since 2002, Respondent has had the ability to make reasonable inquiry of [Petitioner-Mother] into [Michelle's] condition, needs and expenses and has failed to do so.

In the order terminating Respondent-Father's parental rights in Natalya, the trial court found as a fact that:

17. [Respondent-Father] did not visit with [Natalya] since at least 2005 and the entry of the custody Order. . . .

18. [Respondent-Father] has not talked to [Natalya] on the phone for at least three years.

19. [Respondent-Father] did not maintain contact with [Natalya after 2005 because he had a car accident on April 4, 2005 in High Point, NC, was hospitalized for two (2) weeks, and reports that his life "was a mess."

20. [Respondent-Father] was arrested in March 2007 for non-payment of child support. [Respondent-Father] contacted [Petitioner-Mother] on her phone for the first time since 2005 and asked for visitation. [Petitioner-Mother responded that she would need to confer with her attorney. [Respondent-Father] has not had any further contact with [Petitioner-Mother] for at least a year and a half.

21. [Respondent-Father] has not sent [Natalya] any cards, letters or gifts since at least 2005.

Respondent-Father has not challenged any of the above findings of fact made by the trial court as lacking adequate evidentiary support. As a result, these findings of fact are deemed to be supported by sufficient evidence and are binding on appeal. N.C.R. App. P. 28(b)(6); *see also In re P.M.,* 169 N.C. App. 423, 424, 610 S.E.2d 403, 404-05 (2005) (concluding respondent had abandoned factual assignments of error when she "failed to specifically argue in her brief that they were unsupported by evidence").

Respondent-Father contends on appeal that the "biggest factor" leading to his status as an absentee parent was the successful efforts of Petitioner-Mother, motivated by a number of factors, "to shut him out of the children's lives." In addition, Respondent-Father contends that his recent actions demonstrate that he did not intend to abandon his relationship with his children. However, as is evidenced by its undisputed factual findings, the trial court considered and rejected these arguments. The trial court specifically found that the only limitation on Respondent-Father's ability to visit with Michelle was Hilltop Home's policy of notifying Petitioner-Mother when Respondent-Father visited. Despite this liberal visitation policy, Respondent-Father visited Michelle only once after the entry of the 2005 custody order. Furthermore, the trial court found that Respondent-Father failed to inquire about Michelle's "condition, needs and expenses" despite having the ability to do so. The trial court's unchallenged findings of fact demonstrate that Respondent-Father has not seen Natalya since 2005 and had not spoken to her by phone in at least three years despite the fact that he could have made contact with Natalya had he wished to do so. Finally, the undisputed evidence establishes, as the trial court found, that Respondent-Father failed to provide either Michelle or Natalya with any cards, letters or gifts after 2005. Based on these unchallenged findings of fact, the trial court had ample justification for concluding that Respondent-Father's conduct was willful and that he had "withheld his presence, his love, his care, and the opportunity to display filial affections for the juvenile[s]" during the relevant six-month period. As a result, we hold that the trial court did not err in concluding that Respondent-Father's parental rights in both Michelle and Natalya were subject to termination for abandonment pursuant to N.C. Gen. Stat. §7B-1111(a)(7).

IN RE M.D., N.D.

[200 N.C. App. 35 (2009)]

Respondent-Father also argues that the trial court erred by concluding that his parental rights in Natalya were subject to termination for non-payment of child support pursuant to N.C. Gen. Stat. § 7B-1111(a)(4). However, since we have upheld the trial court's determination that Respondent-Father's parental rights in both Michelle and Natalya were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(7), we need not examine whether the trial court correctly found that other grounds for terminating Respondent-Father's parental rights in one or both of the children existed as well. *Taylor*, 97 N.C. App. at 64, 387 S.E.2d at 233-34.

**[3]** Finally, Respondent-Father challenges the trial court's conclusion that the best interests of the juveniles would be served by terminating his parental rights. After careful review of the record and briefs, we find that there is no error in the dispositional component of the trial court's termination order.

"The trial court has discretion, if it finds that at least one of the statutory grounds exists, to terminate parental rights upon a finding that it would be in the [juvenile's] best interests." *In re Nesbitt*, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001), *subsequent appeal*, 170 N.C. App. 196, 613 S.E.2d 531 (2005), 182 N.C. App. 175, 641 S.E.2d 417 (2007) (internal citations omitted). In determining whether terminating a parent's parental rights would be in the juvenile's best interests, the trial court is required to consider: (1) the age of the juvenile; (2) the likelihood of adoption; (3) the impact of terminating the parent's parental rights on the accomplishment of the permanent plan for the juvenile; (4) the bond between the juvenile and the parent; (5) the relationship between the juvenile and a proposed adoptive parent or other permanent placement; and (6) any other relevant consideration. N.C. Gen. Stat. § 7B-1110(a). The trial court is to take that action at the dispositional stage of a termination proceeding "which is in the best interests of the juvenile" when "the interests of the juvenile and those of the juvenile's parents or other persons are in conflict." N.C. Gen. Stat. § 7B-1100(3). The trial court's decision at the dispositional phase of a termination of parental rights proceeding is a discretionary determination that will not be disturbed on appeal unless it is so arbitrary that it could not have been the product of reasoned decision-making. *In re J.B.*, 172 N.C. App. 747, 751, 616 S.E.2d 385, 387, *aff'd*, 360 N.C. 165, 622 S.E.2d 495 (2005).

A careful review of the trial court's termination orders demonstrates that it considered the factors required by N.C. Gen. Stat.

IN RE M.D., N.D.

[200 N.C. App. 35 (2009)]

§ 7B-1110(a) in making its termination decision. In its order terminating Respondent-Father's parental rights in Michelle, the trial court found as a fact that:

34. [Michelle] has special needs.

35. [Respondent-Father] has not shown any intention or desire to meet the special needs of [Michelle].

36. [Michelle] responds to Timothy J. W., who acts like a father to her and has assumed the duties of a father.

37. [Michelle] is in need of a stable plan and a care plan should circumstances prevent [Petitioner-Mother], who has been [Michelle's] sole source of support for all expenses not covered by Medicaid.

38. Timothy J. W. would like to adopt [Michelle] and assume all of the rights as well as the obligations as the father of [Michelle].

39. There is a high likelihood that [Michelle] will be adopted by Timothy J. W. and in order to proceed to adoption, it is necessary to terminate the [Respondent-Father's] parental rights.

In its order terminating Respondent-Father's parental rights in Natalya, the trial court found as a fact that:

31. [Natalya] remembers very little about [Respondent-Father].

32. [Natalya] remembers going to the State Fair with [Respondent-Father].

33. It is emotionally difficult for [Natalya] not to know whether she has a father and when or whether she is going to see him. [Natalya] is stressed by the lack of communication by her father.

34. [Natalya] responds to Timothy J. W., who acts like a father to her and has assumed the duties of a father.

35. [Natalya] does not have a close bond with [Respondent-Father].

36. [Natalya] does have a close bond with Timothy J. W.

**IN RE M.D., N.D.**

[200 N.C. App. 35 (2009)]

37. [Natalya] is in need of a stable plàn and desires a father.

38. Timothy J. W. would like to adopt [Natalya] and assume all of the rights as well as the obligations as the father of [Natalya].

39. There is a high likelihood that [Natalya] will be adopted by Timothy J. W. and in order to proceed to adoption, it is necessary to terminate [Respondent-Father's] parental rights.

Based on these findings of fact, we can see no abuse of discretion in the trial court's decision that Respondent-Father's parental rights in Michelle and Natalya should be terminated. The only arguments that Respondent-Father has advanced in opposition to the trial court's dispositional decision are contentions that the children are currently in stable placements, that adoption by their stepfather would not result in any appreciable change in the children's lives, and that the only effect of the trial court's termination order will be to eliminate any possibility that Respondent-Father will be able to reestablish a relationship with Michelle and Natalya. Such arguments do not, however, provide any basis for an appellate reversal of the trial court's order, since it is supported by adequate findings of fact and conclusions of law and is the product of a reasoned decision-making process. As a result, we conclude that the trial court did not commit an error of law at the dispositional phase of this consolidated termination of parental rights proceeding.

Thus, for all of the reasons set forth above, we conclude that the trial court's orders terminating Respondent-Father's parental rights in Michelle and Natalya are free from prejudicial error. As a result, both orders should be, and hereby are, affirmed.

Affirmed.

Judges Stephens and Stroud concur.