HUNTER, JR., Robert N., Judge.
The mother (hereinafter "Mother") of Z.E. ("Zelda"), J.J. ("Julie"), and K.T. ("Kim")[1] appeals from an order terminating her parental rights. The father (hereinafter "Father") of Julie and Kim also appeals the termination of his parental rights. The father of Zelda is unknown.
I. Background
On 12 January 2015, the Durham County Department of Social Services ("DSS") filed a juvenile petition alleging the three juveniles were neglected and dependent. DSS obtained nonsecure custody of the juveniles on the same date. After an adjudication and disposition hearing on 7 and 8 April 2015, the trial court filed an order on 6 May 2015 adjudicating the juveniles neglected and dependent. The trial court placed the juveniles in DSS custody. The court ordered the parents to stay away from each other except for the purposes of attending court hearings or child and family team meetings. The court also ordered each parent to comply with seven-step case plans for the purpose of correcting the conditions that led to the removal of the children from their custody.
After several review hearings, the court ceased reunification efforts with the parents and changed the permanent plan to adoption pursuant to a permanency planning review order entered 12 July 2016. On 11 October 2016, DSS filed a motion and petition to terminate the parental rights of Mother, Father, and the unknown father of Zelda. As common grounds for termination of the parental rights of Mother and Father, the petition alleged that each (1) neglected the children; (2) willfully left the children in foster care without making reasonable progress in correcting the conditions which led to removal of the children; and (3) willfully failed to pay a reasonable portion of the cost of care for the children although physically and financially able to do so. As an additional ground for termination of Father's parental rights, the petition alleged he failed to establish paternity of, or otherwise legitimate, the child Kim.
Over the course of several dates between 20 February 2017 and 23 March 2017, the court conducted hearings on the petition. On 3 May 2017, the court filed an order terminating the parental rights of Mother and Father on the three common grounds listed above. Mother and Father filed timely notices of appeal. The court appointed attorneys to represent them on appeal.
II. Standard of Review
In a termination of parental rights proceeding, the trial court "examines the evidence and determines whether sufficient grounds exist under N.C. Gen. Stat. § 7B-1111 to warrant termination of parental rights." In re T.D.P., 164 N.C. App. 287, 288, 595 S.E.2d 735, 736 (2004), aff'd per curiam, 359 N.C. 405, 610 S.E.2d 199 (2005). Appellate review of the trial court's order is to determine (1) whether the findings of fact are supported by clear, cogent and convincing evidence; and (2) whether the findings of fact support the adjudicatory conclusions of law. In re Shepard, 162 N.C. App. 215, 221, 591 S.E.2d 1, 6, disc. review denied sub nom. In re D.S., 358 N.C. 543, 599 S.E.2d 42 (2004). The conclusions of law are reviewed de novo. In re S.N., 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008), aff'd per curiam, 363 N.C. 368, 677 S.E.2d 455 (2009).
III. Analysis
Appellate counsel for Mother filed a "no merit" brief pursuant to N.C.R. App. P. 3.1(d) in which he stated, "[a]fter a conscientious and thorough review of the record and the relevant law and consultation with other experienced appellate attorneys, [he is] unable to identify any issues with sufficient merit on which to base an argument for relief on appeal." Counsel asked this Court to review the record to determine whether he overlooked any possible meritorious issues. He identified two issues which might potentially support relief on appeal. He attached to the brief a copy of a letter he mailed to Mother where he advised her of his inability to find any meritorious issues and her right to submit written arguments directly to this Court. To assist Mother in filing her own written arguments, counsel provided a copy of the court file documents, the transcript, the address of this Court, and instructions regarding how to file the written arguments. He further advised Mother if she desired to file written arguments, she needed to do so immediately. Mother has not filed her own arguments.
We conclude counsel complied with the requirements of N.C.R. App. P. 3.1(d). We reviewed the record and considered the two issues cited by counsel. We conclude the findings of fact are supported by competent evidence. The findings support the court's conclusions of law. The trial court determined three grounds existed to terminate Mother's parental rights. Nothing in the record suggests the court abused its discretion by terminating Mother's parental rights. The record also does not support an argument for meaningful relief on appeal. We thus affirm the termination of Mother's parental rights.
Counsel for Father filed a brief contending a number of findings of fact are not supported by competent evidence. He also contends the findings of fact do not support the conclusions of law. He contends this Court must reverse the conclusion of law terminating his parental rights on the ground of neglect because the evidence does not support the finding of a probability of repetition of neglect.
We first address each finding Father claims is not supported by the evidence. If the trial court's findings of fact "are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary." In re Williamson, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988). Unchallenged findings of fact "are deemed to be supported by sufficient evidence and are binding on appeal." In re M.D., 200 N.C. App. 35, 43, 682 S.E.2d 780, 785 (2009). A finding of fact that is not supported by evidence is harmless error if other findings adequately support the conclusion of law. In re T.M., 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006).
Father first contests finding number 68, which states Father has continued to engage in domestic violence with his current female partner. This finding cites an incident in late May or early June 2016 in which he drove a car straight towards his partner and threatened to "blow up" her friends. Father acknowledges the woman obtained a domestic violence protection order against him, and also acknowledges the court took judicial notice of the court file in that matter. However, Father contends the court did not take judicial notice of any facts contained in the file.
We are not persuaded by Father's argument. The domestic violence order is contained in the record on appeal as a supplement. In that order, the trial court found Father placed his fiancé in fear of imminent serious bodily injury by driving his car "straight to the [fiancé] putting her in fear of her life" and Father threatened to "blow up" the fiancé's friend. We conclude this evidence supports the trial court's finding.
Father next contests finding of fact number 69. There, the court found Father does not understand he is a perpetrator of domestic violence by his controlling behaviors. Father contends this finding is unsupported and contradicted by the evidence. In finding of fact number 22, which Father does not challenge, the court took judicial notice of the order adjudicating the juveniles as neglected. There, the court noted, inter alia, Father forced Mother to leave the residence on multiple occasions. Similarly, Father does not challenge the finding of fact stating Mother repeatedly returned to Father's home and exposed the children to an injurious environment, despite her awareness of Father's "violent and controlling behavior." Father testified he took domestic violence classes because the court ordered him to attend those classes. He acknowledged he needed the classes because he was a victim of domestic violence. After being a victim, Father became a "predator for domestic violence," or the aggressor, as a defense mechanism. When asked to clarify how he was an aggressor, Father replied, "By using verbal abuse ... Yelling, raising my voice, calling out a name, using swear names." We note Father failed to acknowledge his controlling behavior. We conclude the evidence supports this finding and other unchallenged findings of fact.
Father also challenges portions of findings of fact numbers 71, 73, 74, 75, and 78. Here, the court made findings concerning Father's mental health issues, including personality disorders. Father contends these findings are not "fully supported" by the testimony of the one expert at the hearing. These findings state:
71. [Father] exhibits traits associated with Narcissism, Antisocial Personality Disorder, and Borderline Personality Disorders, including but not limited to lack of understanding of emotions, tendency to blame others for his life, quickness to anger, a history of engaging in questionably legal activities, and a history of drug addiction. [Father's] mental health issues impair his relationship with others. There is no medication to address [Father's] narcissism and personality disorders. [Father] reports to be taking psychoactive medications; however, he has not shared with his treating therapist what medication he is taking.
...
73. [Father] has a deep-seated and historic desire to rescue others, which results in him making decisions that are negative towards him and create a likelihood of repetition of neglect of [Kim and Julie], as it impairs his decision-making processes and does not make for a safe and secure environment for the minor children.
74. [Father's] personality disorders contribute to his domestic violence behaviors.
75. While [Father] has participated in therapy with B&D Behavioral, Carolina Outreach, and Donna Boni, he has not been consistent in ensuring that he has been working on the issues that the court ordered him to address. Although he was consistent in his appointments at Carolina Outreach, this Court ordered more specific treatment. [Father] continues to show a lack of insight into his own issues. Further [Father] has used his court ordered therapy to engage in couples' therapy with his fiancé instead of focusing on the court ordered therapy related to issues and confrontations that have arose out of his desire to "save" other people. He continues to try to help other people, which results in disputes with those people, and tries to control others behaviors. This Court is also concerned that [Father's] forgetting his notebook resulting in his treatment not progressing as it should.
...
78. Despite several months of treatment, [Father] is still exhibiting behaviors of his previous diagnoses, and it is anticipated that his treatment will be ongoing.
Father contends the expert "did not testify" his mental health diagnoses impair his relationships with others, impair his decision-making processes, or contribute to his domestic violence behavior. Father also contends the expert "did not testify" Father continues to show a lack of insight into his mental health issues. Additionally, Father argues the findings do not establish a nexus between his mental health issues and a risk of harm to the children.
Based upon our examination of the expert's testimony, the medical records, and other unchallenged findings, we conclude the evidence amply supports the trial court's findings. First, we note Father has not challenged finding of fact number 72, where the court found Father's narcissism and personality disorders "create challenges for him in accepting responsibility for his actions" and "make it difficult for him to regulate his emotions and cause him to have ... a 'thin emotional skin' which results in him reacting strongly to things that evoke feelings in him." He also does not challenge finding of fact number 76. There, the court found Father's problematic behaviors continue to occur, and he is likely to repeat his neglect of the children because he fails to understand his "helping" people can endanger the children. Father also does not challenge finding of fact 78, where the court found, despite months of treatment, Father continues "exhibiting behaviors of his previous diagnoses, and it is anticipated that his treatment will be ongoing."
The medical records further support the trial court's findings by stating Father has difficulty accepting responsibility for his actions and seeks to blame others for events. For instance, the clinical note for 21 June 2016 states Father was angry at the girls' grandmother because she believes Father will not allow her to see the girls if the trial court awards him custody. The note further states: "He has difficulty keeping a boundary with [grandmother] and she is able to push his buttons. He is frustrated about ways in which he feels [DSS has] lied to him and changed the rules on him so he is 'always wrong'. Does not want to see big picture of responsibility." Another note from the visit on 11 October 2016 states Father learned DSS was moving to terminate his parental rights, which he believed " 'doesn't really mean anything' because he is convinced 'they want to give him the girls.' [Father] believes that he has changed a lot and offers as proof that his children are all spending more time with him. He feels [DSS] prejudged him and blames them[.]"
We conclude the foregoing evidence provides a basis for the trial court finding Father's mental health issues impair his relationships with others, impair his decision-making processes and insights, and contribute to his domestic violence behavior. We also conclude the findings and evidence provide the necessary nexus between his personality disorders and risk of harm to the children since they contribute to his inability to control negative behaviors, including domestic violence.
We next address the conclusion of law stating grounds exist to terminate Father's parental rights on the basis he neglected the juveniles. See N.C. Gen. Stat. § 7B-1111(a)(1) (2015). A juvenile is neglected if he does not receive proper care, supervision or discipline from his parent, has been abandoned, is not provided necessary medical or remedial care, or lives in an environment injurious to his welfare. N.C. Gen. Stat. § 7B-101(15) (2015). "A finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding." In re Young, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997). The court must consider evidence of any changed circumstances since the time of a prior adjudication and the likelihood of repetition of the neglect. In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984). If the child has not been in the parent's custody, the court "must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case." In re McLean, 135 N.C. App. 387, 396, 521 S.E.2d 121, 127 (1999).
In addition to the facts related supra, the findings of fact show Father and Mother have a history of domestic violence. This includes an incident in May 2014 where, during an altercation between mother and father, a piece of asphalt was thrown through a window. This asphalt narrowly missed one of the children, and resulted in broken glass falling on the child. Also Mother was forced to leave the residence as many as eight times and move into a domestic violence shelter. Through the course of the juvenile proceedings, Father continued to demonstrate a misunderstanding of the reasons why the trial court adjudicated the children neglected and removed them from the home. Father attributed the trial court's actions to reasons other than the domestic violence between the parents and exposure of the children to that violence. Father failed to participate in the specific type of domestic violence treatment ordered by the court until December 2016, at which time he enrolled in a twenty-six-week domestic violence treatment program but attended only a few classes before dropping out. Father continues to engage in domestic violence with his current domestic partner, showing behaviors reminiscent of those he displayed with the Mother. We conclude the court's findings of fact support the conclusion of law that Father has neglected the children and the neglect is likely to be repeated.
Father also makes arguments concerning the other two grounds the court found for terminating his parental rights. Because a finding of only one ground is necessary to terminate parental rights, we need not consider these other arguments. In re P.L.P., 173 N.C. App. 1, 8, 618 S.E.2d 241, 246 (2005), aff'd per curiam, 360 N.C. 360, 625 S.E.2d 779 (2006).
We affirm the order terminating the parental rights of both parents.
AFFIRMED.
Report per Rule 30(e).
Judges DILLON and MURPHY concur.

These pseudonyms are used for ease of reading and to protect the juveniles' identities.