ZACHARY, Judge.
Respondent-mother appeals from orders terminating her parental rights to her minor children A.C-M. ("Andy") and F.C-M. ("Fiona") (collectively, "the children").[1] The children's father voluntarily relinquished his parental rights and is not a party to this appeal. We affirm.
I. Background
On 5 June 2014, the Alexander County Department of Social Services ("DSS") filed juvenile petitions alleging that Andy and Fiona were neglected and dependent. The petition included allegations that, inter alia : (1) the father abused alcohol; (2) the parents misallocated their income, in part to purchase alcohol, causing their rent to fall into arrears; (3) the father and the children's older brother, Joe,[2] engaged in domestic violence; (4) Joe had been adjudicated delinquent and abused drugs and alcohol in the home, and the parents took insufficient steps to curtail this behavior; (5) Fiona suffered from a myriad of severe gastrointestinal problems, and the parents failed to ensure she received proper treatment; (6) Fiona tested positive for salmonella and trichomoniasis, a sexually transmitted disease ; and (7) the children were often left in the care of Joe or another brother, fourteen-year-old Albert. DSS obtained nonsecure custody of Fiona and removed her from the home.
On 1 July 2014, respondent-mother entered into a case plan with DSS. Under the plan, she was required to obtain mental health treatment, gain parenting skills, and obtain stable housing and employment. The record reflects that respondent-mother's primary language is Tarascan, a Mexican Indian dialect. However, she is illiterate in her native language, and she has a poor understanding of both spoken and written English and Spanish.
On 26 September 2014, the trial court entered an order concluding that Andy and Fiona were neglected juveniles.[3] Both parents had stipulated that the allegations in the petition were true, and the allegations were incorporated by reference into the order. Andy was placed in DSS custody, but that portion of the order was stayed on the condition that he was enrolled in daycare. Fiona remained in DSS custody in foster care. Respondent-mother was awarded at least two hours of supervised visitation per week with Fiona.
In a review order entered on 22 October 2014, the trial court determined that Andy's placement with his parents was no longer in his best interests and that he should be placed in foster care. The children's placements then remained unchanged through the ensuing months as the trial court conducted a series of permanency planning hearings. On 16 June 2016, the trial court entered an order changing the permanent plan for Andy and Fiona from reunification to a primary plan of adoption and a secondary plan of guardianship. The court found that the parents were still unable to ensure Fiona would be provided sufficient medical care and that respondent-mother still lacked basic parenting skills.
On 12 August 2016, DSS filed motions in the cause to terminate respondent-mother's parental rights to the children on the grounds of neglect, failure to make reasonable progress, and failure to pay a reasonable portion of the children's care. See N.C. Gen. Stat. § 7B-1111(a)(1)-(3) (2017). On 14 September 2017, the trial court entered an adjudication order which concluded that respondent-mother's parental rights were subject to termination on the grounds of neglect and failure to make reasonable progress. On 27 October 2017, the court entered a disposition order concluding that termination was in the children's best interests, and as a result, the court terminated respondent-mother's parental rights. Respondent-mother filed timely notice of appeal.
II. Standard of Review
"The standard of review in termination of parental rights cases is whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law. We then consider, based on the grounds found for termination, whether the trial court abused its discretion in finding termination to be in the best interest of the child." In re Shepard , 162 N.C. App. 215, 221-22, 591 S.E.2d 1, 6 (citations and quotation marks omitted), disc. review denied sub nom. In re D.S. , 358 N.C. 543, 599 S.E.2d 42 (2004). Unchallenged findings are presumed to be supported by competent evidence and are binding on appeal. See In re M.D. , 200 N.C. App. 35, 43, 682 S.E.2d 780, 785 (2009).
III. Grounds for Termination
Respondent-mother first argues that the trial court erred in concluding that grounds existed to terminate her parental rights to the children. We disagree.
Pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), a trial court may terminate parental rights upon finding that the parent has neglected the child. A neglected juvenile is one
who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare.
N.C. Gen. Stat. § 7B-101(15) (2017). "Neglect must exist at the time of the termination hearing, or if the parent has been separated from the child for an extended period of time, the petitioner must show that the parent has neglected the child in the past and that the parent is likely to neglect the child in the future." In re C.W. & J.W. , 182 N.C. App. 214, 220, 641 S.E.2d 725, 729 (2007) (citing In re Ballard , 311 N.C. 708, 714-15, 319 S.E.2d 227, 231-32 (1984) ). If prior neglect is considered, "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." Ballard , 311 N.C. at 715, 319 S.E.2d at 232 (citation omitted).
In this case, there is no dispute that the children were previously determined to be neglected. Thus, the issue presented to the trial court was the probability of a repetition of neglect if the children were returned to respondent-mother. As to this issue, the trial court's findings focus primarily on respondent-mother's inability to provide proper medical care for the children while they had been with her and the likelihood of that behavior continuing if they were returned to her. Specifically, the court found:
The Respondent Mother has failed to demonstrate that she understands the medical needs of the juveniles. She failed to seek out appropriate medical treatment for the juveniles prior to DSS involvement, and she failed to appropriately inquire as to the specific medical needs of the children following DSS involvement. She lacks even a basic understanding of the children's medical needs. She was unable in her testimony to articulate that she has gained any additional knowledge or skills to allow her the ability to address the children's medical needs-particularly those of [Fiona]. She has not demonstrated that she is capable of addressing her children's specific and significant medical needs. Thus, should the Juveniles be returned to the Respondent Mother's care, the probability of the repetition of neglect is high.
Respondent-mother does not challenge the substance of this finding in her brief but instead argues that it is "not an accurate portrayal," because it does not consider her language and learning deficits which made it difficult to understand her children's problems. She asserts, without evidentiary support, that if she were provided with an appropriate interpreter and a higher level of assistance from DSS, she "could have the tools to seek help for her daughter's medical needs."
The evidence at the termination hearing reflected that respondent-mother had shown minimal interest in her children's medical needs. At the time Fiona was originally removed from respondent-mother's care, she had lesions on her genital area and tested positive for salmonella due to respondent-mother's failure to seek and provide treatment for Fiona's chronic bowel issues. Fiona also had an untreated sexually-transmitted disease. In addition, Andy had speech and developmental delays because of unaddressed medical issues.
A DSS protective service agent testified that respondent-mother did not attend Fiona's medical appointments after Fiona came into DSS custody, although she was permitted to do so. When respondent-mother testified at the hearing, she was unable to identify Fiona's medical conditions or how to treat them. She did not attempt to obtain more information when she attended one of Fiona's appointments shortly before the termination hearing. Respondent-mother also did not know how often Andy saw his ear, nose, and throat doctor, and she did not know the names of any of Fiona's or Andy's doctors. In light of this evidence, the trial court's finding that respondent-mother would be unable to adequately address her children's medical needs if they were returned to her care was proper, and it supported the court's conclusion that respondent-mother's parental rights were subject to termination based on neglect. Because one ground for termination was adequately supported by the court's findings, it is unnecessary to address the remaining ground found by the trial court. In re M.D. , 200 N.C. App. at 40, 682 S.E.2d at 783.
IV. Best Interests
Respondent-mother's final argument is that the trial court erred in determining that termination of parental rights was in the best interests of the children. We disagree.
In deciding whether terminating parental rights is in a juvenile's best interests, the trial court must consider the following criteria and make findings regarding any that are relevant:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a)(1-6) (2017). A factor is considered relevant if there is conflicting evidence concerning the factor presented at the termination hearing, such that it is placed in issue. In re H.D. , 239 N.C. App. 318, 327, 768 S.E.2d 860, 866 (2015) (citation omitted).
In her brief, respondent-mother first argues that the trial court erred by failing to make findings regarding any potential guardianship for the children. Citing the unpublished case In re T.L.M. , No. COA17-189, 2017 N.C. App. LEXIS 722 (N.C. Ct. App. Aug. 10, 2017) (unpublished), she contends that, because guardianship was the secondary permanent plan at the time of the termination hearing, findings on guardianship were required pursuant to N.C. Gen. Stat. § 7B-1110(a)(3) ("Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile."). However, as an unpublished opinion, T.L.M. is not binding on future panels.
Moreover, the facts of T.L.M . differ substantially from the facts of this case. In T.L.M. , the Court noted that the potential guardian's testimony took up most of the evidence at disposition. 2017 N.C. App. LEXIS at *21. Here, respondent-mother neglected to mention the possibility of the existence of relatives who could serve as guardians until almost three years after the original petition alleging neglect and dependency was filed. Nevertheless, the protective service agents made multiple attempts, both by phone and in person, to contact these relatives, but received no response. There was no testimony by or about any potential guardians in this case. Accordingly, guardianship was not placed in issue in this case, and no findings regarding guardianship were required. In re H.D. , 239 N.C. App. at 327, 768 S.E.2d at 866.
Respondent-mother also argues that the trial court abused its discretion in concluding that termination of her parental rights was in Fiona's best interests. She notes that the trial court found that she and Fiona had a strong bond. However, as respondent-mother concedes, the trial court fully considered this bond, but found that "[h]owever strong Respondent Mother's love for Fiona is, it cannot overcome her inability to understand and carry out the complex instructions of Fiona's medical providers."
The trial court is not required to give undue weight to any one of the N.C. Gen. Stat. § 7B-1110(a) factors. The trial court's order reflects that it properly considered all of the required factors and, based on that consideration, made a reasoned determination that termination was in the children's best interests.
V. Conclusion
The trial court's findings of fact supported its conclusion that respondent-mother's parental rights could be terminated on the ground of neglect. The court was not required to make dispositional findings regarding potential guardianship placements, and it did not abuse its discretion by concluding that termination of respondent-mother's parental rights was in the children's best interests. The trial court's orders are affirmed.
AFFIRMED.
Report per Rule 30(e).
Judges ELMORE and DAVIS concur.

Pseudonyms are used to protect the identities of the juveniles and for ease of reading. See N.C.R. App. P. 3.1(b).

"Joe" and "Albert" are pseudonyms for the juveniles' older siblings who are not subjects of this appeal.

The dependency allegation was not pursued by DSS.