HUNTER, JR., Robert N., Judge.
Respondent appeals from the trial court's order terminating his parental rights to his minor child, J.E.O. ("Joey").[1] On appeal, Respondent argues the trial court failed to make sufficient findings to conclude, and erred in concluding, he willfully abandoned Joey and Joey was a neglected and dependent juvenile. We affirm.
I. Factual and Procedural Background
On 29 June 2016, Joey's mother, Petitioner, filed a petition to terminate Joey's father's, Respondent's, parental rights on the grounds of neglect, dependency, and willful abandonment. See N.C. Gen. Stat. § 7B-1111(a)(1), (6), (7) (2017). The petition alleged the following. In late August 2007, Petitioner gave birth to Joey. Respondent had not seen Joey since 2008. Respondent did not send any cards, gifts, or letters to Joey. Respondent did not give Petitioner any financial assistance or child support. Respondent had been convicted of possession of child pornography and was incarcerated in a federal prison in Virginia, with an anticipated release date of May 2020.
The court held the termination hearing on 1 December 2017. Petitioner called Respondent, and the following narrative is taken from Respondent's testimony.[2] Respondent and Petitioner were engaged at the time of Joey's birth in August 2007, but split "about a year" later. The two initially shared joint custody of Joey. In 2008, the State charged Respondent with indecent liberties and contributing to the delinquency of a minor. Respondent entered a plea of "no contest" to the charges. While at a courthouse,[3] Respondent "sign[ed] [his] custody rights over," meaning he intended to give Petitioner full custody of Joey. Respondent did not intend to relinquish his parental rights to Joey. Respondent did not remember the Onslow County Department of Social Services ("DSS") serving him with a petition alleging he abused or neglected Joey.[4]
Respondent also could not recall the last time he saw Joey. He knew it was "before the court stuff[,]" and he estimated it was when Joey was six to eight months old. Following his release from prison in 2010, Respondent moved to West Virginia. Respondent had "[m]inimum or none" contact with Joey. Respondent could not "get a hold of" Petitioner and "really had no access" to Joey. Respondent unsuccessfully tried to contact Petitioner and Joey through social media and family members. DSS asked Respondent to complete psycho-sexual and psychological evaluations, as a condition to see Joey. He started the evaluations, but did not complete them.
In 2011, a jury convicted Respondent of possession of child pornography. From the conviction in 2011 to the date of the hearing, Respondent had not seen Joey.
I could not find him. I mean she had moved with some girlfriend next door. I mean I knew where the house was. When I lived down in North Carolina, I could go. But I mean I have no- no way to contact her, and like I said, the family wasn't- really didn't want me contacting her in any way. They would do whatever it was to not let me contact them anyway.
Respondent did not send cards to Joey because he "had no address." Respondent did not send Petitioner money for Joey since the day he "sign[ed] [his] custody over[.]" However, Petitioner never requested any financial support. When asked the last time he gave a gift to Joey, Respondent answered:
I haven't. I have- matter of fact, I- your-before you filed this case, you said I had not had contact with my son before six months, and I had sent you stuff to give to my son, past and present stuff, that you said I- when you filed the court papers said I had not contacted six months or said nothing. That's why you were filing paperwork. And I had sent stuff to you to give to them, because I had no address, and since when you first contacted me to ask to give my rights up- excuse me, ask to give my rights up and I said no, I was not going to. I just didn't have an address to sen[d] stuff to them, and I started sending it to your office, and I still don't know if you even got that stuff then.
Respondent did "everything [he] could" to be a part of Joey's life and there was "nothing else [he] could do." To be a better parent, Respondent attended parenting classes, psychology sessions, and a drug education course. He would send letters and gifts to Joey if he had an address.
Petitioner specifically asked Respondent if he abandoned Joey from 28 January 2016 to 28 June 2016. Respondent testified he "sent them birthday cards or something right before" Petitioner filed the termination petition. Also, on the day he received the termination petition, he sent a letter back to the Onslow County District Court, indicating he did not want the court to terminate his parental rights and stating he sent "a birthday card and some letters[.]"
Petitioner testified in support of her petition, and the following narrative is taken from her testimony. From Petitioner's and Respondent's separation in 2007 until November 2008, they shared custody of Joey. Since November 2008, Respondent did not see Joey and did not send any letters, cards, or gifts to Joey. Respondent never gave Petitioner any financial support.
On 15 September 2010, Respondent signed a form titled "Relinquishment of Minor for Adoption by Parent or Guardian[.]" (All capitalized in original). Petitioner filed the "relinquishment of adoption[,]" but the relinquishment had no legal effect because it was the wrong form. Petitioner became "aware that a couple of letters had been written." She did not read the letters and did not know if Respondent wrote them to Joey.
On 25 January 2018, the trial court entered an order terminating Respondent's parental rights based on all three grounds alleged by Petitioner. The trial court concluded it was in Joey's best interests to terminate Respondent's parental rights. See N.C. Gen. Stat. § 7B-1110(a) (2017). Respondent appeals.
II. Jurisdiction
On 11 December 2017, Respondent filed a pro se document and requested information relating to his case and "forms to Appeal[.]" On 6 February 2018, Respondent filed another pro se document, titled "Motion for Reconsideration and to Stay Motion Pending Appeal", and requested the trial court reconsider its decision to terminate his parental rights. Respondent argued he received ineffective assistance of counsel. In support of this argument, he asserted the following: (1) trial counsel failed to contact him; (2) trial counsel did not send him a copy of the termination order; (3) trial counsel purposely withheld the order; (4) nevertheless, Respondent filed "Appeal forms"; and (5) trial counsel's ineffectiveness could bar him from timely filing his appeal. On 9 March 2018, Respondent, through his trial counsel, filed written notice of appeal from the 25 January 2018 order.
On 3 July 2018, Respondent's appellate counsel filed a petition for writ of certiorari , acknowledging Respondent filed untimely notice of appeal. As proper and timely notice of appeal is jurisdictional, dismissal of Respondent's appeal is proper. In re A.L. , 166 N.C. App. 276, 277, 601 S.E.2d 538, 538 (2004) ("It is well established that 'failure to give timely notice of appeal ... is jurisdictional, and an untimely attempt to appeal must be dismissed.' ") (citation and alteration omitted) (ellipses in original). However, in our discretion, we allow Respondent's petition for writ of certiorari to review the merits of his appeal. See N.C. R. App. P. 21(a)(1) (2018) ("The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action ....").
III. Standard of Review
"This Court reviews a trial court's conclusion that grounds exist to terminate parental rights to determine whether clear, cogent, and convincing evidence exists to support the court's findings of fact, and whether the findings of fact support the court's conclusions of law." In re A.B. , 239 N.C. App. 157, 160, 768 S.E.2d 573, 575 (2015) (citation omitted). "If the trial court's findings of fact are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary." In re S.C.R. , 198 N.C. App. 525, 531, 679 S.E.2d 905, 909 (2009) (quotation marks and citation omitted). Unchallenged findings of fact "are conclusive on appeal and binding on this Court." Id. at 532, 679 S.E.2d at 909 (citation omitted). "The trial court's conclusions of law are reviewable de novo on appeal." In re J.S.L. , 177 N.C. App. 151, 154, 628 S.E.2d 387, 389 (2006) (citation and quotation marks omitted).
IV. Analysis
On appeal, Respondent challenges all three of the trial court's grounds for termination of his parental rights-neglect, dependency, and willful abandonment.
The trial court may terminate a parent's parental rights upon a determination "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion[.]" N.C. Gen. Stat. § 7B-1111(a)(7). Because Petitioner filed the petition to terminate Respondent's parental rights on 29 June 2016, the relevant minimum time period was from at least 29 January 2016 to 29 June 2016.
The trial court made the following findings of fact relevant to its determination that grounds existed to terminate Respondent's parental rights based on willful abandonment:
21. That the Respondent has not had any physical or verbal contact with [Joey] since approximately 2008.
22. That the Respondent has never sent cards, gifts or letters to [Joey] since his birth on August 29, 2007.
23. That the Petitioner has not received any financial assistance on behalf of [Joey] from the Respondent since the birth of [Joey] in 2007.
24. That in December of 2008, the Respondent was charged with taking indecent liberties with a child, amongst other charges, after the Respondent hosted a party for his teenage son and other teenage children.
25. That shortly after the Department of Social Services became involved and instituted an action against the Respondent father based on allegations of abuse and/or neglect involving [Joey] and two of the Respondent's other minor children.
26. That the Respondent executed a Relinquishment of Minor for Adoption by Parent or Guardian on or about September 15, 2010, while the Respondent was present at a hearing with the Department of Social Services, as to [Joey].
27. That the aforesaid Relinquishment appears on its face to relinquish his parental rights of [Joey]. However, the Clerk of Court for Onslow County, North Carolina would not allow the Petitioner's current husband to proceed with a step-parent adoption for [Joey] based on the fact that the signed Relinquishment was not the proper form for a step-parent adoption.
28. That aforesaid Relinquishment does, however, show the Respondent's intention as it pertained to [Joey], at said time.
29. That the Respondent was in fact convicted of indecent liberties with a child in Onslow County, North Carolina and was required to register as a sex offender in 2010.
30. That upon the Respondent's release from prison on the conviction for indecent liberties of a child, the Respondent relocated to the State of West Virginia and away from [Joey].
31. That in 2011 in West Virginia, the Respondent was subsequently charged and later convicted of possession of child pornography.
32. That Respondent remains incarcerated in federal prison, but has been transferred to the federal prison in Marion, IL where he was at the time of this hearing, based on the child pornography conviction and is not expected to be released any time in the near future.
33. That there was a period of time between the Respondent's two prison sentences where he was not incarcerated, and he failed to reach out to [Joey] during that time.
The trial court concluded as follows, in pertinent part:
2. That by clear, cogent, and convincing evidence, grounds exist for termination of the parental rights of the Respondent father ... in that:
....
c. That the Respondent has willfully abandoned [Joey] for at least six months immediately preceding the filing of the petition ( § 7B-1111(a)(7) ) in that:
i. The Respondent has not had any contact with the minor child since approximately 2008, a period in excess of six months.
ii. The Respondent has willfully withheld his love, has not been present, has not displayed any filial affection, nor recognized any important days in [Joey's] life since approximately 2008.
3. That it is in the best interest of the minor child that the Respondent father's parental rights be terminated.
First, Respondent challenges finding of fact 22 and conclusion of law 2(c)(i) and argues the "unrefuted evidence showed that [he] made attempts to contact [Joey] in the six-month window of consideration." Respondent points to his own testimony at the termination hearing supporting a different finding and tending to lead to the conclusion he did not willfully abandon Joey in the six months prior to the filing of the petition. At the termination hearing, Respondent testified that shortly before Petitioner filed the petition to terminate his parental rights, "I sent - I think it was a birthday card and some letters and stuff I had written [Joey]" to Petitioner's attorney. However, Petitioner later testified since November 2008, she had not received letters, cards, gifts, or financial assistance for Joey from Respondent. While Petitioner was "aware of some letters", she did not know if Respondent wrote them to Joey, and neither she nor Joey received them.
From finding of fact 22, it is apparent Respondent's testimony did not persuade the trial court, and the trial court, instead, accepted Petitioner's testimony. "[I]t is the duty of the trial judge to consider and weigh all of the competent evidence, and to determine the credibility of the witnesses and the weight to be given their testimony." In re Gleisner , 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000) (citation omitted). Thus, it was for the trial court to determine the credibility of Respondent's testimony, and finding of fact 22 is binding on appeal. Moreover, finding of fact 22-in consideration with the unchallenged findings establishing Respondent failed to have any contact with Joey since 2008 and failed to provide financial support for Joey since his birth-supports the trial court's conclusion of law 2(c)(ii), which states Respondent "withheld his love, has not been present, has not displayed any filial affection, nor recognized any important days in [Joey's] life since approximately 2008." See In re M.D. , 200 N.C. App. 35, 43, 682 S.E.2d 780, 785-86 (2009) (holding the respondent-father "withheld his presence, his love, his care, and the opportunity to display filial affections for the juvenile[s]" where he had not visited or telephoned the minor children, inquired about their "condition, needs and expenses," or sent any cards, letters, or gifts during the relevant six-month period) (alteration in original).
Next, Respondent argues finding of fact 21[5] and conclusion of law 2(c) are "legally erroneous" because the law does not require a parent to have contact with his child to avoid a conclusion of abandonment. Respondent argues, instead, the law requires a parent to forego all parental duties and relinquish all parental claims. Respondent is correct insofar as this Court held " '[a]bandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child.' " In re McLemore , 139 N.C. App. 426, 429, 533 S.E.2d 508, 509 (2000) (quoting In re Young , 346 N.C. 244, 251, 485 S.E.2d 612, 617 (1997) ). However, this Court explained "if a parent withholds his presence, his love, his care, the opportunity to display filial affection, and willfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." In re J.D.L. , 199 N.C. App. 182, 189-90, 681 S.E.2d 485, 491 (2009) (quotation marks and citation omitted). " 'Whether a biological parent has a willful intent to abandon his child is a question of fact to be determined from the evidence.' " In re S.R.G. , 195 N.C. App. 79, 84, 671 S.E.2d 47, 51 (2009) (quoting In re Adoption of Searle , 82 N.C. App. 273, 276, 346 S.E.2d 511, 514 (1986) ).
The trial court found Respondent failed to have any physical or verbal contact with Joey since 2008 and he did not send cards, gifts, letters, or financial assistance to Joey since Joey's birth. Such conduct demonstrates Respondent's intent to forego all parental duties and rights to Joey and is relevant to determining whether Respondent relinquished his parental claims and abandoned Joey. Therefore, we reject Respondent's argument.
Respondent does not challenge the remaining findings of fact made by the trial court, thus, they are binding on appeal.[6] S.C.R. , 198 N.C. App. at 532, 679 S.E.2d at 909. The trial court found in September 2010, Respondent executed a Relinquishment of Minor for Adoption by Parent or Guardian as to Joey and the Relinquishment showed Respondent's intention at that time. See In re C.J.H. , 240 N.C. App. 489, 503, 772 S.E.2d 82, 91 (2015) ("[T]he trial court may consider respondent's conduct outside [the relevant six-month period] in evaluating respondent's credibility and intentions."). The trial court found Respondent did not have any contact with Joey since 2008, failed to send cards, gifts, or letters to Joey since his birth, and failed to give any financial assistance on behalf of Joey since his birth. We hold the trial court's findings of fact support the conclusion Respondent willfully abandoned Joey for at least six consecutive months immediately preceding the filing of the petition. Because we conclude grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(7), we need not address the other grounds determined by the trial court. See In re Taylor , 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990) (citation omitted) (stating a finding of any of the separately enumerated grounds is sufficient to support termination). Therefore, we affirm the trial court's termination order.
V. Conclusion
For the foregoing reasons, we affirm the trial court's order terminating Respondent's parental rights.
AFFIRMED.
Report per Rule 30(e).
Chief Judge McGEE and Judge MURPHY concur.

A pseudonym has been used throughout this opinion to protect the identity of the juvenile and for ease of reading. N.C. R. App. P. 3.1(b) (2018).

Respondent participated in the hearing via telephone from prison.

From Respondent's testimony, it is unclear why Respondent was a courthouse, whether it be for his custody dispute, a criminal proceeding, or a juvenile proceeding. It is also unclear at which courthouse Respondent signed his rights over.

The court took judicial notice of the DSS action, wherein the court found Respondent neglected Joey and abused "some of his other children[.]"

Respondent does not argue that finding of fact 21 is not supported by the evidence.

Respondent presents arguments as to the other findings, but does not challenge the findings as unsupported by competent evidence. Instead, Respondent argues they are "legally erroneous", "meaningless", or fail to show a ground for termination.