DILLON, Judge.
 

 *264
 
 Father appeals from three orders: the trial court's 22 March 2017 order (the "TPR Order") terminating his parental rights to
 
 *718
 
 J.A.K. ("Jack")
 
 [1]
 
 and two prior permanency planning orders entered in this matter; one entered on 18 April 2016 (the "April Order") eliminating reunification efforts and changing the permanent plan to adoption with a concurrent plan of guardianship; and one entered six months later on 19 October 2016 continuing the April Order (the "October Order"). We affirm the trial court's TPR Order and the April Order, and we dismiss Father's appeal of the October Order.
 

 I. Background
 

 In August 2014, the New Hanover County Department of Social Services ("DSS") obtained nonsecure custody of four-month-old Jack,
 
 [2]
 
 and filed a petition alleging that he was a neglected juvenile. Father was named in the petition, but, despite several attempts, was never served with process.
 

 In September 2014, the trial court entered an order adjudicating Jack neglected based on the mother's stipulation to the allegations in the petition. Though Father still had not been served with process, the trial court ordered Father to present himself to DSS to enter into a case plan and establish a visitation agreement.
 

 In June 2015, after paternity testing confirmed Father was Jack's biological father, Father was appointed counsel. Father also began visitation with Jack, and he entered into a case plan with DSS. His case plan required completion of parenting classes and maintaining stable and appropriate housing and employment. In a permanency planning order following a September 2015 hearing, the trial court ordered Father to comply with his case plan.
 

 Months later, in the April Order, the trial court ordered DSS (1) to cease reunification efforts with Father; (2) pursue termination of Father's parental rights; and (3) changed the permanent plan for Jack from reunification to adoption by Jack's foster parents, with a concurrent plan of guardianship.
 

 *265
 
 In June 2016, DSS filed a petition to terminate Father's parental rights to Jack, alleging two grounds for termination. The petition also sought to terminate the parental rights of Jack's mother. In the October Order, a permanency planning order entered in October 2016, the trial court confirmed the permanent plan of adoption with the foster parents, with a concurrent plan of guardianship with the foster parents.
 

 Following a hearing, the trial court entered the TPR Order, in which it found the existence of both grounds for termination alleged against Father and Jack's mother. The trial court also concluded that termination of the parental rights of Father and of Jack's mother was in the juvenile's best interest. Father appealed.
 

 II. Analysis
 

 As an initial matter, we must determine whether Father's appeals from the April Order and October Order are properly before us. Father has filed an alternative petition for writ of
 
 certiorari
 
 in the event that they are not. We address each order in turn.
 

 In the April Order, the trial court ceased reunification efforts with Father pursuant to N.C. Gen. Stat. § 7B-906.2(b) (2015). Section 7B-1001(a) of our juvenile code states that when our Court is reviewing a trial court order terminating parental rights, our Court shall also review any prior order by the trial court eliminating reunification as a permanent plan if
 
 all
 
 the following apply:
 

 1. A motion or petition to terminate the parent's rights is heard and granted.
 

 2. The order terminating parental rights is appealed in a proper and timely manner.
 

 3. The order eliminating reunification as a permanent plan is identified as an issue in the record on appeal of the termination of parental rights.
 

 N.C. Gen. Stat. § 7B-1001(a)(5)(a) (2015). In this case, the appeal complies with all the requirements of Section 7B-1001(a)(5)(a).
 

 *719
 
 We note that under the former version of N.C. Gen. Stat. § 7B-507(c) (2013), a party seeking review of the reunification order was required to give
 
 written
 
 notice that (s)he was also appealing the reunification cessation order.
 
 See also
 
 N.C. Gen. Stat. § 7B-1001(b). The new statutory scheme, however, does not appear to require written notice. Rather, the plain language of Section 7B-1001(a)(5) suggests that written notice
 
 *266
 
 is no longer required: the statute expressly states that appeal may be taken from an order entered under Section 7B-906.2(b) so long as it is "properly preserved,
 
 as follows,
 
 " then listing the three conditions quoted above. N.C. Gen. Stat. § 7B-1001(a)(5) (emphasis added).
 
 [3]
 

 Because Father has complied with these requirements, review by
 
 certiorari
 
 is not necessary. Therefore, we dismiss his petition as to the trial court's April Order.
 

 Father also requests issuance of the writ to review the October Order. In that order, however, the trial court merely continued the permanent plan announced in its April Order. Therefore, it is not an order eliminating reunification as a permanent plan pursuant to Section 7B-906.2(b). And Section 7B-1001(a) does not provide for appeal from an order that merely continues a permanent plan. Because Father has no statutory right to appeal from the October Order, we dismiss his appeal and, in our discretion, deny his petition for writ of
 
 certiorari
 
 as to the October Order.
 

 A. April (Permanency Planning) Order
 

 In his first argument, Father contends that the trial court erred in ceasing reunification efforts
 
 [4]
 
 in the April Order. Specifically, Father contends that the trial court's findings are not based on sufficient credible evidence and are insufficient to comply with the statutory requirements of N.C. Gen. Stat. § 7B-906.2(b). For the following reasons, we disagree.
 

 "This Court's review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and whether the findings support the conclusions of law."
 
 In re P.O.
 
 ,
 
 207 N.C. App. 35
 
 , 41,
 
 698 S.E.2d 525
 
 , 530 (2010). Findings supported by competent evidence, as well as any uncontested findings, are binding on appeal.
 
 In re M.D.
 
 ,
 
 200 N.C. App. 35
 
 , 43,
 
 682 S.E.2d 780
 
 , 785 (2009).
 

 *267
 
 Pursuant to N.C. Gen. Stat. § 7B-906.2, if it determines that reunification should no longer be part of the permanent plan, the trial court is required to make "written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety[.]" N.C. Gen. Stat. § 7B-906.2(b).
 

 First, we note that the transcript from the permanency planning hearing was not made part of the record on appeal. "The burden is on the appellant to 'commence settlement of the record on appeal, including providing a verbatim transcript if available.' "
 
 Sen Li v. Zhou
 
 , --- N.C. App. ----, ----,
 
 797 S.E.2d 520
 
 , 524 (2017) (quoting
 
 State v. Berryman
 
 ,
 
 360 N.C. 209
 
 , 216,
 
 624 S.E.2d 350
 
 , 356 (2006) ). Father has likewise failed to reconstruct the proceedings by including a narrative of the hearing in the record on appeal.
 
 See
 

 In re L.B.
 
 ,
 
 184 N.C. App. 442
 
 , 454,
 
 646 S.E.2d 411
 
 , 417 (2007). Without a verbatim transcript or narrative, the evidence Father "challenges as insufficient is not before us in the record."
 
 Sen Li
 
 , --- N.C. App. at ----,
 
 797 S.E.2d at 524
 
 . Consequently, we must deem the findings of fact as conclusive on appeal, and we limit our review to whether the findings of fact support the decision to cease reunification efforts with
 
 *720
 
 Father.
 
 See
 

 M.D.
 
 ,
 
 200 N.C. App. at 43
 
 ,
 
 682 S.E.2d at 785
 
 .
 
 [5]
 

 Here, the trial court found that "a continuation of [reunification] efforts would be clearly futile and inconsistent with the Juveniles' health, safety, and need for a safe, permanent home within a reasonable period of time." While this language is slightly different than the statutory language contained in N.C. Gen. Stat. § 7B-906.2(b), it is sufficient to comply with the requirements of the statute. This ultimate finding
 
 *268
 
 was based on findings that Father had not progressed on his case plan, that he missed a recent Child and Family Team meeting, that he refused home visits by a social worker, and that his legal fees were a barrier to progress. The court also found that Father's visitation had not been expanded, and that inspection of his home was required prior to any unsupervised visitation with Jack. In another finding, the trial court noted that Father was still trying to obtain housing, from which one can infer that he did not have appropriate or independent housing at the time of the permanency planning hearing.
 

 The uncontested findings of fact demonstrate that Father had not made progress on the housing component of his case plan and was uncooperative with DSS. Given that housing was an area of concern for DSS, and that a year had passed since Father became involved in the case, we conclude that the trial court's findings are sufficient to show a lack of initiative by Father to demonstrate that reunification would be successful and consistent with Jack's health and safety. Accordingly, we hold that the trial court did not err in its April Permanency Planning Order ceasing reunification efforts.
 
 [6]
 

 B. TPR Order
 

 Next, Father challenges the trial court's grounds for terminating his parental rights in the TPR Order. Pursuant to N.C. Gen. Stat. § 7B-1111(a), a trial court may terminate parental rights upon a finding of one of eleven enumerated grounds. If this Court determines that the findings of fact support one ground for termination, we need not review the other challenged grounds.
 
 In re Humphrey
 
 ,
 
 156 N.C. App. 533
 
 , 540,
 
 577 S.E.2d 421
 
 , 426 (2003). We review the trial court's order to determine "whether the trial court's findings of fact were based on clear, cogent, and convincing evidence, and whether those findings of fact support a conclusion that parental termination should occur[.]"
 
 In re Oghenekevebe
 
 ,
 
 123 N.C. App. 434
 
 , 435-36,
 
 473 S.E.2d 393
 
 , 395 (1996) (citation omitted). Any unchallenged findings of fact are presumed to be supported by competent evidence and are therefore binding on appeal.
 
 See
 

 M.D.
 
 ,
 
 200 N.C. App. at 43
 
 ,
 
 682 S.E.2d at 785
 
 .
 

 *269
 
 We conclude that the trial court was justified in terminating Father's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). Under this subsection, the trial court must find that the parent
 
 willfully
 
 left the juveniles in foster care for over twelve months, and that the parent has not made
 
 *721
 
 reasonable progress to correct the conditions which led to the removal of the juveniles from their home.
 
 In re O.C.
 
 ,
 
 171 N.C. App. 457
 
 , 464-65,
 
 615 S.E.2d 391
 
 , 396 (2005). And it is well-established that "willfulness" under this ground does not require a showing of fault by the parent.
 
 Oghenekevebe
 
 ,
 
 123 N.C. App. at 439
 
 ,
 
 473 S.E.2d at 398
 
 (citation omitted). "Willfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort."
 
 In re McMillon
 
 ,
 
 143 N.C. App. 402
 
 , 410,
 
 546 S.E.2d 169
 
 , 175 (2001).
 

 As an initial matter, Father contends that he did not leave Jack in foster care for the requisite twelve-month period. Although Jack was taken into nonsecure custody on 18 August 2014, Father contends that as the "non-removal parent," the twelve-month period should not commence until 30 September 2015, when Father purportedly "first was recognized by the court and allowed to participate as a parent with counsel." We disagree.
 

 First, we note that Father cites to no legal authority for his specific contention that the relevant statutory period commenced only when Father first appeared at a hearing with counsel. Indeed, the only case cited by Father supports the opposite conclusion-that the relevant period of time commences when the trial court enters a court order requiring that the juvenile be removed from the home.
 
 In re A.C.F.
 
 ,
 
 176 N.C. App. 520
 
 , 526,
 
 626 S.E.2d 729
 
 , 734 (2006). In
 
 A.C.F.
 
 , this Court held "that 'for more than 12 months' in [N.C. Gen. Stat.] § 7B-1111(a)(2) means the duration of time beginning when the child was 'left' in foster care or placement outside the home
 
 pursuant to a court order
 
 , and ending when the motion or petition for termination of parental rights was filed."
 
 Id.
 
 at 527,
 
 626 S.E.2d at 734-35
 
 (emphasis added and omitted).
 

 Next, we turn to Father's challenges to particular findings of fact. The trial court made finding of fact 11 regarding this ground for termination which outlines Father's behavior during the relevant one-year period, which included his lack of reasonable progress in his visitation with Jack, obtaining adequate housing, gaining employment, and completing parenting classes:
 

 His delay and lack of progress during the year and nine months prior to the filing of the Termination Petition leads the Court to find that [Father] has not put himself
 
 *270
 
 in a position to correct his lack of involvement with the child since birth, that he has disregarded the fact that the child's mother has made no progress to correct her issues by repeatedly having the child communicate with her during visitation despite warnings to stop this practice, and did not establish a home for himself and the child in a timely fashion as detailed in the Finding of Fact numbered 9 above.
 

 In finding of fact number 9, the trial court detailed the inadequacies of Father's housing. The court found that Father did not obtain independent housing until 1 April 2016, a week after the permanency planning hearing at which reunification efforts were ceased, and that his residence was later deemed unsafe for Jack. Father told a social worker that his girlfriend often spent the night and that he intended to get a roommate. The lease was under a different name, and a Google search of that name revealed a mugshot of Father. Lastly, he failed to let the social worker visit his prior residence.
 

 Father makes several challenges to findings of fact 9 and 11. First, he claims that most of the findings of fact in finding of fact 11 involve "stale matters and circumstances." Father again claims that the relevant time period began on 30 September 2015, after he attended his first hearing represented by counsel. Again, we are not persuaded, and Father cites no authority for his claim. Indeed, Father was on notice that he was Jack's putative father since April 2014, and he began participating in the juvenile proceedings as early as April 2015. Moreover, much of the finding of fact 11 pertains to Father's actions after his paternity was established. Therefore, we reject his argument that the evidence concerns stale matters.
 

 Next, Father takes issue with the portion of finding of fact 11, quoted above, which provided that by allowing Jack's mother to communicate with Jack, Father disregarded the mother's failure to make progress. He
 
 *722
 
 essentially claims the trial court imputed her lack of progress onto him. Father, however, misses the point of this finding. A social worker warned Father several times to refrain from allowing Jack to speak to the mother, but he continued to do so despite the warnings. Thus, in making this finding, the trial court was not imputing the mother's actions to Father, but instead was demonstrating Father's poor judgment and lack of cooperation with DSS.
 

 Father also attempts to challenge several portions of finding of fact number 9 pertaining to his inability to obtain independent and appropriate
 
 *271
 
 housing. He argues that the trial court failed to account for his poverty and his legal woes. He also argues that his apartment was clean and well-decorated, and that DSS's concerns were speculative. In total, he contends that the trial court failed to consider these issues and resolve conflicts in the evidence. Thus, Father does not appear to challenge the factual basis for the findings pertaining to his housing, but instead argues that the trial court should have drawn different inferences from the evidence. However, it is apparent that the court simply weighed the evidence and drew certain inferences from it. This is the duty of the trial court, and we decline to reweigh the evidence.
 
 See
 

 In re Hughes
 
 ,
 
 74 N.C. App. 751
 
 , 759,
 
 330 S.E.2d 213
 
 , 218 (1985) ("The trial judge determines the weight to be given the testimony and the reasonable inferences to be drawn therefrom. If a different inference may be drawn from the evidence, he alone determines which inferences to draw and which to reject."). Given that the trial court's findings of fact are supported by the testimony of the social worker, we reject Father's challenges to the findings regarding housing.
 

 Father also challenges finding of fact 12, in which the trial court found that Father would benefit from dismissal of the termination of parental rights action in his immigration case. Father argues that consideration of his immigration case was improper and that this finding is not supported by the evidence. However, we conclude that the other findings detailed above are sufficient to support termination of Father's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). Therefore, we need not address his challenge to finding of fact 12.
 
 See
 

 In re T.M.
 
 ,
 
 180 N.C. App. 539
 
 , 547,
 
 638 S.E.2d 236
 
 , 240 (2006) ("[W]e agree that some of [the challenged findings] are not supported by evidence in the record. When, however, ample other findings of fact support an adjudication of neglect, erroneous findings unnecessary to the determination do not constitute reversible error.").
 

 Finally, we address Father's contentions that his conduct was not
 
 willful
 
 and that he made reasonable progress under the circumstances. Father argues that he became fully engaged as a father as soon as his paternity was established and made substantial progress by attending parenting classes and consistently visiting with Jack. Father also argues that his trouble in acquiring independent housing was due to his poverty, which the trial court failed to consider. We are not persuaded.
 

 First, we note that Father's argument regarding poverty is rebutted directly by the trial court's finding of fact 11, in which the trial court found that Father's actions were not solely the result of poverty. Second, the findings of fact demonstrate that Father fell short in achieving a major component of his case plan. Father's case plan had
 
 *272
 
 two main components: to attend parenting classes and to stabilize his housing situation and income. It took Father nearly a year after his initial participation in the case to obtain independent housing, and even then, his housing was not appropriate for Jack. Father used an alias to sign his lease and did not know who would be living in his residence. Without the name of a roommate, DSS had no way to verify whether the residence would provide a safe environment for Jack. Additionally, he had previously refused to allow home visits and he could not provide verification of his income beyond a single check. "A finding of willfulness is not precluded even if the respondent has made some efforts to regain custody of the children."
 
 In re Nolen
 
 ,
 
 117 N.C. App. 693
 
 , 699,
 
 453 S.E.2d 220
 
 , 224 (1995). "Extremely limited progress is not reasonable progress."
 
 Id.
 
 at 700,
 
 453 S.E.2d at 224-25
 
 . Thus, based on the findings by the trial court, Father's completion of
 
 *723
 
 parenting classes amounts to nothing more than limited progress and does not rebut his failure to obtain adequate housing.
 

 III. Conclusion
 

 In conclusion, we affirm the trial court's April Order and the TPR Order. We dismiss Father's appeal from the October Order entered 19 October 2016.
 

 AFFIRMED IN PART; DISMISSED IN PART.
 

 Judge HUNTER, JR. concurs.
 

 Judge MURPHY concurs in part and dissents in part by separate opinion.
 

 MURPHY, Judge, concurring in part, but dissenting in the decision rendered as to Appellant's motion.
 

 While I concur in the reasoning and the result based upon the Record and transcripts before us and join whole-heartedly with all but the first paragraph in footnote 5, the Majority's resolution of Father's
 
 Motion for Consideration of Transcript as Part of Record on Appeal
 
 improperly deprives Father of appellate review. Father was not required to act in accordance with our 7 July 2017
 
 Order
 
 , but the transcriptionist was:
 

 The motion filed in this cause on the 5th of July 2017 and designated '[Father's] Motion for Transcripts ...' is allowed. The Court Reporter shall prepare and deliver the transcript for the 24 March 2016 and 22 September 2016
 
 *273
 
 permanency planning hearings on or before 11 August 2017. The transcriptionist shall upload the transcript to this Court's Electronic Filing site, and shall provide copies 'to the respective parties to the appeal.'
 

 Further, Father had been found indigent at the trial level and assigned the Appellate Defender who in turn assigned counsel of record. As revealed through Father's
 
 Motion for Transcripts
 
 and
 
 Motion for Consideration of Transcript as Part of Record on Appeal
 
 , neither Father nor his counsel could exercise control over the transcriptionist in this matter. The transcriptionist did not complete and upload the transcript until 20 November 2017, more than three months after the date we had ordered, and Father timely filed his motion on 6 December 2017. Therefore, justice requires that we grant Father's motion and consider his arguments in light of the transcripts. I respectfully dissent from that portion of the Majority's opinion that places the burden of the transcriptionist's failure to comply with our
 
 Order
 
 on the indigent party and denies his motion.
 

 [1]
 

 Pseudonyms are used throughout this opinion to protect the identity of the juveniles and for ease of reading.
 

 [2]
 

 The petition also alleged that Jack's half-brother (who has a different biological father) was also neglected. However, neither the half-brother's father nor the children's mother is a party to this appeal.
 

 [3]
 

 We note that N.C. Gen. Stat. § 7B-1001(b) still describes the manner in which notice to preserve the right to appeal must be made. However, given that the General Assembly eliminated the notice requirement from N.C. Gen. Stat. § 7B-906.2(b), we find that reference to the "notice to preserve" in Section 7B-1001(b) is surplusage. Simply stated, a statute governing the manner in which notice to preserve must be made is ineffectual where there is no statutory requirement that a party must actually give notice to preserve a right of appeal.
 

 [4]
 

 While the current Section 7B-906.2(b) no longer uses the term "ceasing reunification efforts," the parties and the trial court in the instant case still use this term, which is a vestige of the former Section 7B-507(c).
 

 [5]
 

 Our Court ordered Father to provide the transcript by August 2017; however, Father failed to meet this deadline and never requested an extension. In November 2017, well after the record was settled and briefs were filed, the transcripts were provided to our Court. Father then filed a motion with our Court to amend the record to incorporate the transcript in December 2017.
 

 A majority of our panel, in our discretion, has denied Father's motion. The dissent disagrees with our decision to deny Father's motion, while agreeing with our ultimate resolution of the appeal. It could be argued that our panel's split decision as to the resolution of Father's motion creates an appeal of right from our decision
 
 on that motion
 
 to the Supreme Court under the plain language of N.C. Gen. Stat. § 7A-30(2) :
 

 Except as provided in [N.C. Gen. Stat. §] 7A-28, an appeal lies of right to the Supreme Court from
 
 any decision
 
 of the Court of Appeals rendered in a case ... [i]n which there is a dissent when the Court of Appeals is sitting in a panel of three judges.
 

 N.C. Gen. Stat. § 7A-30 (2017) (emphasis added). A denial of a motion by our Court is arguably a "decision ... rendered in a case[.]"
 

 Id.
 

 [6]
 

 Father also claims that the trial court failed to make findings under N.C. Gen. Stat. § 7B-906.2(d), which requires the trial court to make certain findings regarding the parent's progress, cooperation, and other actions. However, Father has not provided any further argument as to the trial court's compliance with Section 7B-906.2(d), and therefore, we decline to address it on appeal.
 
 See
 
 N.C. R. App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.").