CALABRIA, Judge.
 

 *665
 

 *560
 
 Respondent, the father of D.A. ("Dustin")
 
 [1]
 
 , appeals from the trial court's permanency planning order granting custody of Dustin to the child's maternal grandparents. Because we hold the trial court failed to adopt a permanent plan for Dustin as mandated by N.C. Gen. Stat. § 7B-906.2, we reverse the trial court's order and remand for further proceedings.
 

 I. Factual and Procedural Background
 

 Respondent and the child's mother are no longer involved in a relationship. The mother lives in Hawaii, while respondent lives in Oregon with his girlfriend. The mother has three other children besides Dustin and is involved with the Honolulu Department of Human Services regarding two of those children. Dustin was living with his mother until March 2016 when he left to live with respondent in Chicago, Illinois.
 

 On 26 October 2016, Wake County Human Services ("WCHS") filed a juvenile petition alleging Dustin to be a neglected and dependent juvenile. WCHS alleged that it received a report on 18 October 2016 that Dustin was sent by respondent from Chicago in July of 2016 to stay with his maternal grandparents, Mr. and Mrs. J., in Wendell, North Carolina for a few weeks while he established himself in a new job. A few weeks later, respondent asked if Dustin could stay a couple more weeks as he was still seeking employment. Mr. and Mrs. J. attempted to enroll Dustin in school but needed signed documents from respondent and the mother in order to do so. The petition alleged that respondent had refused to comply with getting the appropriate forms notarized and failed to contact the social worker in order for Dustin to be enrolled in school. WCHS obtained nonsecure custody of Dustin and continued his placement with Mr. and Mrs. J.
 

 The trial court held a hearing on the petition on 22 February and 21 March 2017. On 1 May 2017, the trial court entered an order adjudicating Dustin as neglected. The court ordered respondent to comply with his Out of Home Family Services Agreement, which required
 
 *561
 
 him to enter into and comply with a visitation agreement; complete a drug treatment program and follow all recommendations; refrain from using illegal or impairing substances and submit to random drug screens; complete a psychological assessment and follow all recommendations; complete parenting classes and demonstrate learned skills; and obtain and maintain sufficient housing and income. The trial court found that respondent was a fit and proper person to have unsupervised overnight visitation a minimum of one weekend per month. The trial court did not establish a permanent plan but ordered WCHS to continue to make reasonable efforts to eliminate Dustin's need for placement outside of the home.
 

 The trial court held a placement review and permanency planning hearing on 15 June 2017. In an order entered 9 August 2017, the trial court found that respondent had made substantial progress on his Family Services Agreement goals in that he completed a parenting course, secured sufficient housing, and was participating in therapy. The trial court also found that respondent's home was safe and appropriate for Dustin and that respondent could provide proper care and supervision of Dustin on a trial home placement basis. Therefore, the trial court continued Dustin's custody with WCHS but ordered a trial placement with respondent in Oregon. The court ordered respondent to comply with the conditions of the trial home placement, which included the following: demonstrate learned skills from parenting class; provide at least five days advance notice prior to taking Dustin on an out of state trip; maintain Dustin's enrollment in public school without interruption from trips; maintain sufficient housing; seek out safe and appropriate extracurricular activities for Dustin; maintain sufficient lawful income;
 

 *666
 
 complete a psychological or mental health assessment and follow all recommendations; and maintain regular contact with WCHS and the social worker, notifying WCHS of any change in circumstances within five business days.
 

 On 15 June 2017, Dustin began his trial home placement with respondent. Upon leaving North Carolina, respondent traveled with Dustin to Georgia to visit with respondent's sister through the end of the month. A Georgia social worker checked on the family during this time and verified Dustin's well-being and safety. On 7 July 2017, respondent reported to WCHS that he and Dustin had traveled to Illinois and were visiting with respondent's mother for a few weeks. A wellness check was done while respondent was in Illinois. On 2 August 2017, respondent informed WCHS that they had arrived home in Portland, Oregon.
 

 *562
 
 Respondent contacted the Oregon Interstate Compact on the Placement of Children ("ICPC") social worker, Sonya Sullivan, in order to obtain health insurance for Dustin so that he could take Dustin to the dentist in Oregon and enroll him in therapy. Ms. Sullivan conducted a home visit on 10 August 2017 and the visit "went well." However, Ms. Sullivan learned that respondent and his girlfriend had purchased airline tickets for themselves and Dustin to go to France to attend a wedding and for respondent and his girlfriend to get married. Respondent had not informed WCHS of the trip or that he planned to marry. Respondent had purchased the tickets in April 2017 hoping to have custody of Dustin and planned to fly out of New York on 1 August 2017. However, as a result of the scheduled home visit in Oregon, neither respondent nor Dustin went to France.
 

 On 23 August 2017, Ms. Sullivan reported to WCHS that an FBI background check revealed an outstanding warrant for respondent from Georgia. Ms. Sullivan initially believed the order for arrest was due to a federal probation violation. However, it was later discovered respondent had failed to appear for a scheduled hearing in Georgia in 2014 for a misdemeanor driving without a license charge. Social services contacted respondent on 23 August 2017 regarding the existence of the warrant. Because respondent was not able to provide a feasible plan of care for Dustin if respondent was arrested on the outstanding warrant, WCHS decided to remove Dustin from respondent's care. Dustin was removed from respondent's home on 24 August 2017 and placed back in the home of Mr. and Mrs. J. Respondent contacted the state of Georgia and his warrant was cancelled by 26 or 27 August 2017.
 

 A subsequent placement and permanency planning hearing was held on 13 October 2017. In an order entered 21 November 2017, the court found that respondent had signed Dustin up for soccer and parkour, but did not enroll Dustin in public school or obtain dental treatment for Dustin prior to his removal from the home on 24 August 2017. The court also found that respondent did not provide proof of his income and that respondent acknowledged he drove with Dustin in the car many times without having a valid driver's license. Therefore, the court found that respondent "continued to act in a manner inconsistent with [his] constitutionally protected status as a parent" and that it was not possible for Dustin to return to respondent's home in the next six months. Accordingly, the trial court awarded legal custody of Dustin to the maternal grandparents. The court also waived further review hearings and relieved WCHS, the guardian ad litem, and respondent's attorney "of further obligations in this matter." Respondent filed timely written notice of appeal on 19 December 2017.
 

 *563
 
 Respondent appeals from the trial court's permanency planning order changing legal custody of Dustin pursuant to N.C. Gen. Stat. § 7B-1001(a)(4) (2017).
 

 II. Permanent Plan
 

 Respondent's sole argument on appeal is that the trial court erred in ceasing reunification efforts because the trial court's findings of fact do not support such a conclusion. Because the trial court failed to comply with statutory mandate and adopt a permanent plan for Dustin, however, we decline to address this argument, and reverse and remand.
 

 *667
 

 A. Standard of Review
 

 "This Court's review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and whether the findings support the conclusions of law."
 
 In re P.O.
 
 ,
 
 207 N.C. App. 35
 
 , 41,
 
 698 S.E.2d 525
 
 , 530 (2010). "Findings supported by competent evidence, as well as any uncontested findings, are binding on appeal."
 
 In re J.A.K.
 
 , --- N.C. App. ----, ----,
 
 812 S.E.2d 716
 
 , 719 (2018). The trial court's conclusions of law are reviewed
 
 de novo
 
 .
 
 In re D.H
 
 .,
 
 177 N.C. App. 700
 
 , 703,
 
 629 S.E.2d 920
 
 , 922 (2006) (citation omitted).
 

 B. Analysis
 

 Section 7B-906.2 of our General Statutes provides that
 

 [a]t any permanency planning hearing pursuant to G.S. 7B-906.1, the court shall adopt one or more of the following permanent plans the court finds is in the juvenile's best interest:
 

 (1) Reunification as defined by G.S. 7B-101.
 

 (2) Adoption under Article 3 of Chapter 48 of the General Statutes.
 

 (3) Guardianship pursuant to G.S. 7B-600(b).
 

 (4) Custody to a relative or other suitable person.
 

 (5) Another Planned Permanent Living Arrangement (APPLA) pursuant to G.S. 7B-912.
 

 (6) Reinstatement of parental rights pursuant to G.S. 7B-1114.
 

 N.C. Gen. Stat. § 7B-906.2(a) (2017). The statute further provides that "[a]t any permanency planning hearing, the court shall adopt concurrent
 
 *564
 
 permanent plans and shall identify the primary plan and secondary plan." N.C. Gen. Stat. § 7B-906.2(b). "Reunification shall remain a primary or secondary plan unless the court made findings under G.S. 7B-901(c) or makes written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety."
 
 Id
 
 . "Concurrent planning shall continue until a permanent plan has been achieved." N.C. Gen. Stat. § 7B-906.2(a1). "This Court has held that use of the language 'shall' is a mandate to trial judges, and that failure to comply with the statutory mandate is reversible error."
 
 In re E.M.
 
 ,
 
 202 N.C. App. 761
 
 , 764,
 
 692 S.E.2d 629
 
 , 631 (quoting
 
 In re Eades,
 

 143 N.C. App. 712
 
 , 713,
 
 547 S.E.2d 146
 
 , 147 (2001) ),
 
 disc. review denied
 
 ,
 
 364 N.C. 325
 
 ,
 
 700 S.E.2d 749
 
 (2010).
 

 Here, although the trial court indicated it held "[a] placement review and permanency planning hearing" on 13 October 2017, the trial court did not adopt a permanent plan as required by N.C. Gen. Stat. § 7B-906.2. Despite purporting to hold two permanency planning hearings in this case after the initial disposition, the trial court never established a permanent plan for the child. In the 9 August 2017 order entered after the first permanency planning hearing, the trial court ordered WCHS to continue to make reasonable efforts aimed at returning Dustin "promptly to a safe home ... in accordance with the plan approved by this Court within this Order." However, the court did not adopt a permanent plan for Dustin in the order. Further, the 21 November 2017 order also did not establish a permanent plan for Dustin. Although this order placed custody of Dustin with Mr. and Mrs. J., the order failed to include a primary or secondary plan in accordance with N.C. Gen. Stat. § 7B-906.2(b).
 

 Because the trial court failed to comply with the mandate set forth in N.C. Gen. Stat. § 7B-906.2, we reverse the trial court's permanency planning order awarding custody of Dustin to the maternal grandparents and waiving further review hearings. We remand the case to the trial court for entry of an order in which the court shall adopt one or more permanent plans in accordance with N.C. Gen. Stat. § 7B-906.2 and make the appropriate necessary findings. Because we are reversing the trial court's order, we need not address respondent's arguments regarding whether the trial court made sufficient findings of fact and whether particular findings were supported by the evidence.
 

 REVERSED AND REMANDED.
 

 Judges TYSON and ZACHARY concur.
 

 [1]
 

 A pseudonym is used to protect the juvenile's identity and for ease of reading.